**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| First Independent Bank of Nevada, ) | |
| ) | No. CV-09-8195-PCT-PGR |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| Mohave State Bank, ) | |
| ) | |
| Defendant. ) | |

Pending before the Court is defendant Mohave State Bank's Motion to Dismiss Amended Complaint (doc. # 15), wherein Mohave State Bank ("Mohave") seeks the dismissal of this action in its entirety pursuant to Fed.R.Civ.P. 12(b)(6). Having considered the parties' memoranda and the oral argument of counsel and having taken the factual allegations of the complaint as true and having construed them in the light most favorable to the plaintiff First Independent Bank of Nevada ("FIBN"), the Court finds that the motion to dismiss should be granted in part and denied in part.

**I.	Background**

On October 4, 2006, Mohave made a loan of $7,000,000.00 to CRM Colorado River Marina, LLC ("CRM") to fund a marina. Pursuant to the loan,

CRM agreed to deliver certain collateral, mortgages, and other agreements to secure the loan. On the same day, Mohave and FIBN entered into a written Non-Recourse Loan Participation Agreement ("NRLPA") under which FIBN agreed to purchase a 35.7142% participatory interest in Mohave's rights and obligations with respect to the loan that Mohave made to CRM. In consideration for that participatory interest in the loan, FIBN paid Mohave $2,500,000.00.

The NRLPA sets out the terms of the agreement, explaining the various warranties, representations, and obligations that flow from one party to the other. The NRLPA provides that it constitutes the entire agreement between the parties and that it is governed by the laws of the State of Arizona.

On September 13, 2008, CRM defaulted on the $7,000,000.00 loan. On September 29, 2008, FIBN inquired why it had not received a September payment under the NRLPA. On October 1, 2008, FIBN inquired to Mohave seeking confirmation of the payment on the loan and other information including current balance, accrued interest, and loan history. In response, Mohave informed FIBN that the interest rate on the loan had increased without further explanation. On October 9, 2008, Mohave provided FIBN with a memo describing the status of the loan including information about the decision to put the loan on non-accrual status and institute a default interest rate of 20.75%. After receiving this memo, FIBN requested a copy of the impairment analysis, downgrade information, and current financial statements that Mohave used to supports its decision. Mohave did not respond to FIBN's request or produce this information.

On February 2, 2009, Mohave recorded a Notice of Default and Election to Sell Under a Deed of Trust with respect to the collateral used to secure the loan.

Mohave agreed to a partial release of the collateral, including boats stored at the marina, without requiring the collateral owners to make rent payments owed to CRM. Mohave did not pay FIBN any amount in connection with the partial release of the collateral or sale pursuant to the deed of trust. Mohave assumed ownership of the remaining collateral and operation of the marina on June 6, 2009. Mohave has not made a payment to FIBN in regard to the loan since September 2008 or repurchased FIBN's participatory interest.

FIBN filed an amended complaint (doc. # 10) on November 9, 2009. The amended complaint raises seven claims: accounting (First Cause of Action); breach of contract (Second Cause of Action); breach of the covenant of good faith and fair dealing (Third cause of Action); rescission (Fourth Cause of Action); assumpsit (Fifth Cause of Action); conversion (Sixth Cause of Action); and breach of fiduciary duty (Seventh Cause of Action). In addition addressing each individual claim, Mohave argues that all claims are barred as they stem from a non-recourse agreement, or in the alternative, that all claims are premature as a matter of law. The Court will first address these overarching arguments made by Mohave.

## II. Legal Standard and Analysis

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it "fails to state a claim upon which relief can be granted." A complaint may be dismissed for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifca Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must contain sufficient factual information to "state a claim that is plausible on its face." *Alcaldee v. Ashcroft*, 582 F.3d 949, 956 (9th

Cir. 2009). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). All factual allegations in the complaint must be taken as true, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

### a. Non-Recourse Loan

The first threshold issue in this case is the meaning of "non-recourse" in the NRLPA[1]. The first line of the NRLPA states the agreement is a "non-recourse loan participation agreement." The NRLPA also states on the first page that "[t]he sale is made by the [Mohave] *without recourse* and shall in no way be construed as an extension of credit by [FIBN] to [Mohave]." (emphasis added). The NRLPA proceeds by describing the various representations, warranties, obligations, and relationship of the parties in the agreement.

Mohave seeks to dismiss FIBN's amended complaint arguing all claims are barred by the non-recourse nature of the NRLPA. Mohave argues that FIBN's "attempts to enforce any alleged obligations under the contract must fail as the contract does not provide for any form of recourse." The Court finds Mohave's argument unpersuasive.

A non-recourse loan is a "secured loan that allows the lender to attach only the collateral, not the borrower's personal assets, if the loan is not repaid." Black's Law Dictionary 1020-21 (9th ed. 2009). A non-recourse loan is implicitly limited to disallowing recourse on the underlying loan. *People's Heritage Sav. Bank v.*

---

[1] The NRLPA does not provide a definition for "non-recourse".

*Recoll Mgmt., Inc.*, 814 F.Supp. 159, 163 (D.Me. 1993) (holding that the non-recourse provision of the loan participation agreement applied only to the underlying indebtedness and not to the contractual and legal obligations specified in the agreement). Non-recourse "does *not* mean that the purchaser cannot pursue the seller in the event that the seller has other contractual or common law obligations which have been breached." *Id.* (emphasis in original). Contractual and common law claims are not barred by a non-recourse loan participation agreement if they have any basis in assertion of breach other than the obligation to pay the underlying loan of the borrower. *Id.* at 163-64. Non-recourse provisions are included in contracts to limit the liability to specified collateral identified in advance, but such terms do not limit the underlying obligation of the agreement.

FIBN's claims[2] have their assertion in breach of the agreement between the parties, irrespective and wholly independent to the obligation to pay the underlying loan of the borrower. FIBN's claims are not based on the default of CRM, but rather on Mohave's response to that default which FIBN alleges is contrary to the NRLPA. Thus, the Court finds Mohave's argument that the amended complaint should be dismissed in its entirety due to the non-recourse nature of the NRLPA to be without merit.

---

[2] FIBN's claims against Mohave include failing to notify FIBN of CRM's failure to make payment on the loan when due, failing to notify FIBN of CRM's default, failing to notify FIBN of adverse changes in the financial condition of CRM, failing to consult with FIBN regarding actions to be taken in response to CRM's default, failing to administer the loan with the same degree of care and discretion it would for its own account, engaging in gross negligence including failing to pursue available remedies against CRM and guarantors, failing to collect payments due from CRM tenants and customers by releasing property, and failing to pay FIBN 35.7142% of all amounts received or applied to the loan.

**b. Premature Claims**

The second threshold argument that Mohave urges this Court to adopt is that all of FIBN's claims are premature. Mohave contends that there is currently no breach of the NRLPA because it "has not acted in bad faith and had not turned a profit yet that could be shared with Plaintiff under the terms of the contract."

Under Arizona law, if a claim is not ripe or the party bringing the complaint is not damaged at the time the suit is commenced, the claim is defective as premature. *Fulton v. Woodford*, 17 Ariz. App. 490, 496, 498 P.2d 564 (1972). FIBN alleges that Mohave has not paid any amount applied to the loan from the trustee's sale, release of collateral, or from CRM that it is due under the NRLPA. FIBN also alleges that Mohave failed to pursue potential remedies against borrowers, personal guarantor, and tenants of the foreclosed property, and failed to consult with FIBN in regard to the partial release of the collateral. FIBN asserts that these actions by Mohave have deprived FIBN of benefits that it is due as a participant in the NRLPA.

Taking FIBN's assertions as true, it has been damaged by the actions of Mohave which are contrary to the stated terms of the NRLPA. Regardless of whether Mohave has acted in bad faith or turned a profit on the underlying loan, it is still bound by the terms of the NRLPA. Therefore, the Court concludes that FIBN's claims are not premature and finds Mohave's argument to be without merit.

Since the Court has disposed of Mohave's two initial threshold arguments, it will now address Mohave's arguments to dismiss the individual causes of action brought by FIBN.

**c. First Cause of Action–Accounting and Second Cause of Action II–Breach of Contract**

In its First Cause of Action, FIBN alleges that it is entitled to an accounting as to all money, property, and payments received by Mohave in connection with the NRLPA. As a matter of law, an accounting is an equitable claim that is only employed in certain situations such as where the accounts to be "resolved are of such 'complicated nature' that only a court of equity can satisfactorily unravel them." *Mezey v. Fioramonti*, 204 Ariz. 599, 603 (App. 2003) (quoting *Dairy Queen v. Wood*, 36 U.S. 469, 479, 82 S.Ct. 894. 8 L.Ed.2d 44 (1962)), *overruled on other grounds by Bilke v. State*, 206 Ariz. 462, 80 P.3d 269 (2003).

In its Second Cause of Action, FIBN asserts that it has performed all of its obligations under the NRLPA, and all conditions required for Mohave to perform its obligations under the NRLPA have occurred, but Mohave has not performed its express obligations under the terms of the NRLPA. FIBN alleges that many of the actions taken by Mohave are directly contrary to its obligation under the NRLPA. Therefore, FIBN argues, Mohave has breached the NRLPA.

In its motion to dismiss, Mohave does not specifically address either of these causes of action. Since the Court has considered and denied Mohave's overarching arguments and finds these causes of action wholly independent of any obligation to pay the underlying loan, Mohave's motion to dismiss these two causes of action is denied.

**d. Third Cause of Action–Breach of the Covenant of Good Faith and Fair Dealing**

In Arizona, the law implies a covenant of good faith and fair dealing in every contract. *Rawlings v. Apocada*, 151 Ariz. 149, 153, 726 P.2d 565 (1986). The purpose of implying the covenant is so that "neither party will act to impair the right

of the other to receive the benefits which flow from the agreement or contractual relationship." *Id.* A party may breach the implied covenant of good faith and fair dealing by exercising discretion inconsistent with the party's reasonable expectations or by acting in ways not expressly precluded by the contractual terms but which bear adversely on the party's expected benefits of the bargain. *Bike Fashion Corp. v. Kramer*, 202 Ariz. 420, 424, 46 P.3d 431 (App. 2002).

In its Third Cause of Action, FIBN alleges that Mohave has breached the covenant of good faith and fair dealing because its actions, including failing to share received payments and failing to pursue potential remedies from the borrower and personal guarantor, have deprived FIBN of benefits under the NRLPA. Mohave argues this claim should be dismissed because FIBN has not plead facts sufficient to establish that it has deprived FIBN of a benefit of the NRLPA given that Mohave itself has not received any benefits under the NRLPA.

FIBN's factual assertions, taken as true, state a plausible claim for the breach of the covenant of good faith and fair dealing. FIBN has alleged that Mohave received payments or applied funds to the underlying loan that it has not shared with FIBN which is inconsistent with the expectations of the parties. FIBN has also plead actions by Mohave, including failing to collect payments and deficiency actions, that would benefit FIBN under the NRLPA when applied to the loan. Therefore, the Court concludes that FIBN has plead sufficient factual information, and Mohave's motion to dismiss the Third Cause of Action is denied.

**e. Fourth Cause of Action–Rescission**

In its Fourth Cause of Action, FIBN seeks a rescission of the NRLPA. Rescission is a remedy, not a cause of action, and may be sought on various grounds. *See Earven v. Smith*, 127 Ariz. 354, 621 P.2d 41 (App. 1980) (breach of

contract); *Renner v. Kehl*, 150 Ariz. 94, 722 P.2d 262 (1986) (mutual mistake); *Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161 (1969) (fraud). Mohave argues that FIBN cannot seek a rescission because it is in default under the terms of the NRLPA by not paying its share of expenses incurred during the sale of the collateral pursuant to the Deed of Trust. In direct contraction to Mohave's assertion, FIBN alleges in the amended complaint that it has made all requested payments for its share of costs associated with the sale of collateral and other collection efforts regarding the loan. As a matter of law, a party may not rescind a contract when it is in default. *Joshua v. Wahl*, 71 Ariz. 413, 417, 228 P.2d 755 (1951). Regardless, a court must accept all allegations of material fact made by the non-moving party when considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). This Court must accept as true FIBN's factual allegations that it has made all requested payments for its share of costs. Based on the factual pleadings stated in the amended complaint, FIBN is not in default under the NRLPA, and Mohave's motion to dismiss the Fourth Cause of Action is denied.

Mohave also argues that the Fourth Cause of Action should be dismissed because FIBN must elect between the remedies of a rescission or damages at this stage in the proceedings. As a matter of law, the rules of civil procedure expressly permit inconsistent pleadings. Fed.R.Civ.P. 8(d)(3); *see also Earven v. Smith*, 127 Ariz. 354, 621 P.2d 41 (App. 1980) (stating that a party cannot be forced to elect in advance upon which theory or remedy it will elect until the conclusion of the trial). The Court concludes that FIBN is not forced to elect a remedy for its various causes of action at this stage in the proceedings. Therefore, Mohave's motion to dismiss the Fourth Cause of Action due to inconsistent pleadings is denied.

**f. Fifth Cause of Action–Assumpsit**

Under Arizona law, assumpsit may be claimed by "showing that the defendant has received or obtained possession of money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff." *Copper Belle Mining Co. of W. Va. v. Gleeson*, 14 Ariz. 548, 551, 132 P. 283 (1913).

In its Fifth Cause of Action, FIBN alleges that Mohave has obtained possession of money or property from the trustee's sale and release of collateral but has refused to pay over this money or property to FIBN. Mohave contends this claim should be dismissed because it has not been unjustly enriched from the property and has not made a profit. Mohave also asserts that FIBN has not plead sufficient facts to maintain a claim for assumpsit. Accepting all of FIBN's factual assertions as true, Mohave has obtained possession of money and property from the sale pursuant to the deed of trust which it is obligated to pay to FIBN under the NRLPA. Regardless of whether Mohave has made a profit from the underlying loan to CRM, it is still obligated to make payments to FIBN of any funds it receives or applies to the loan under the NRLPA. Therefore, the Court denies Mohave's motion to dismiss the Fifth Cause of Action for assumpsit

**g. Sixth Cause of Action–Conversion**

Conversion is "an act of wrongful control or dominion over personal property in denial of or inconsistent with the rights of another." *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 402, 678 P.2d 977 (App. 1984). The foundation for a claim of conversion "rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results." *Jabczenski v. S. Pac. Mem'l Hosps., Inc.*, 119 Ariz. 15, 20, 579 P.2d 53 (App. 1978).

In its Sixth Cause of Action, FIBN alleges it is entitled to a portion of the money, property, and payments that Mohave has received in connection with the loan. Mohave argues that FIBN has not plead sufficient facts to support its claim that it has benefitted or deprived FIBN of any benefits under the NRLPA. Mohave states that its has taken steps to secure the collateral in its own name, as required by the loan documents but has not reaped a profit, therefore precluding a claim of conversion by FIBN.

While Mohave may have not reaped a profit from the NRLPA or underlying loan, the Court concludes that FIBN has asserted sufficient factual allegations that make a claim for conversion plausible on its face.[3] Therefore, Mohave's motion to dismiss the Sixth Cause of Action is denied.

**h. Seventh Cause of Action–Breach of Fiduciary Duty**

FIBN's final claim is for breach of fiduciary duty. Under the "Lead Institution's Relationship to Participant" section, the NRLPA provides that

> [Mohave's] relationship to [FIBN] shall be that of an independent contractor and [Mohave] is not an agent, partner, employee, or joint venturer of [FIBN], and shall have no fiduciary obligations to [FIBN]. However, [Mohave] shall exercise the same degree of care and discretion in making, monitoring, administering, and enforcing the Loan as [Mohave] would ordinarily take in making, monitoring, administering, and enforcing the Loan solely for its own account.

In its Seventh Cause of Action, FIBN contends that although the NRLPA

---

[3] FIBN alleges that it is "entitled to a portion of the money, property, and/or payments that Mohave has received in connection with the loan"; that "Mohave has intentionally and surreptitiously acquired this money, property, and/or payments"; that Mohave took control and sold the collateral under a Deed of Trust while at the same time releasing other collateral without consulting it; that Mohave did not conduct an appraisal or pay it any amount in connection with the partial release of the collateral; and that it has not received any payments from Mohave stemming from the NRLPA since September 2008.

states that "no fiduciary obligations" exist, Mohave "owed a fiduciary duty to FIBN to exercise the same degree of care and discretion in making, monitoring, administering, and enforcing the loan as Mohave would ordinarily take in making, monitoring, administering, and enforcing the loan solely for Mohave's account."

In a loan participation agreement, the rights of the participating bank flow from the agreement itself and not the participation relationship. *F.D.I.C. v. Adams*, 187 Ariz. 585, 594, 931 P.2d 1095 (App. 1996); *see also First Citizens Fed. Sav. And Loan Ass'n v. Worthen Bank and Trust Co.*, 919 F.2d 510 (9th Cir. 1990). The relationship between the lead and participating lender can, as a matter of contract, give rise to the imposition of fiduciary duties. *See Women's Fed. Sav. and Loan Ass'n v. Nev. Nat'l Bank*, 811 F.2d 1255, 1255 (9th Cir. 1987) (holding that provision in loan participation agreement that read defendant was to act "as a trustee with fiduciary duties" created fiduciary duty in loan participation agreement). Yet, a fiduciary duty should not be inferred into a participatory loan agreement between sophisticated parties absent unequivocal language. *First Citizens*, 919 F.2d at 513-14 (holding that no fiduciary duty existed in loan participation agreement although the agreement obligated the lead institution to "administer and service the loan in accordance with the same degree of care that [it] would exercise in the servicing and administering of a loan as its own account.")

The NRLPA fails to unequivocally state that a fiduciary relationship exists. Regardless of the other language contained in the agreement, the NRLPA explicitly states that no fiduciary obligations exist between the parties. Accordingly, Mohave's motion to dismiss FIBN's Seventh Cause of Action is granted with prejudice as it fails to state a claim for breach of fiduciary duty under

Arizona law and is not subject to a curative amendment.

Therefore,

IT IS ORDERED that defendant Mohave State Bank's Motion to Dismiss First Independent Bank of Nevada's First Amendment Complaint (doc. #15) is granted in part and denied in part. The motion is granted to the extent that the breach of fiduciary duty claim, the Seventh Cause of Action of the First Amended Complaint, is dismissed with prejudice as a matter of law pursuant to Fed.R.Civ.P. 12(b)(6), and it is denied in all other respects.

IT IS FURTHER ORDERED that the parties shall file their Joint Case Management Report no later than **May 24, 2010**.[4]

IT IS FURTHER ORDERED that the Scheduling Conference shall be held on **Monday, June 7, 2010, at 11:00 a.m. in Courtroom 601**.

DATED this 7th day of April, 2010.

*(signature)*
Paul G. Rosenblatt
United States District Judge

---

[4] The Joint Case Management Report shall comply with all of the requirements set forth in the Order Setting Scheduling Conference (doc. #9), entered on November 2, 2009.